IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-10111-01-MLB |
| | ) | |
| STEVEN J. DENSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

COMES NOW the United States, by and through Matt Treaster, Assistant United States Attorney for the District of Kansas, and responds to the defendant's motion to suppress and brief (Doc. 13).  On behalf of this response, the United States moves this court to deny the defendant's motion.

## BACKGROUND

The defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 7).  The defendant is alleged to have possessed two long guns in his residence in Wichita, Kansas, on February 27, 2013.   The defendant had been previously convicted of two counts of armed robbery on May 24, 2006, in Sedgwick County District Court, and sentenced to a 61 month prison sentence.  Following his prison sentence he was paroled on May 3, 2012, and then absconded on November 7, 2012.  A warrant was issued for his arrest, and he was arrested in his residence on February 27, 2012.

Kansas Parole Officer Brandon Bansemer developed information that the defendant may be living at 1645 N. Hillside in Wichita, Kansas.  Officer Bansemer had checked the defendant's name through utilities and discovered that the utilities at 1645 N. Hillside were in the defendant's

name along with the name of his girlfriend, Keyionna Miller. A records check revealed that Ms. Miller had an active warrant out of Shawnee County, Kansas.   Officer Bansemer then contacted other officers of the United States Marshals Fugitive Task Force.  The members met and decided to travel to the 1645 N. Hillside address to look for the defendant.  Once at the house, the officers then conducted surveillance for about 20 minutes.  During that time they observed no movement at the residence, but they observed fresh footprints in the snow leading to the back door of the residence and saw that the electric meter was running quickly.

Two of the officers knocked on the front door of the residence[1].  While knocking a small piece of wood covering a hole in the outer door fell off.  No one came to the door.  The officers then reached in the opening, unlocked the door from the inside, and let themselves in.  Once inside they almost immediately found the defendant who was in bed.  The officers got the defendant up and handcuffed him.  He was placed on the living room couch.  During this time other officers did a protective sweep through the remainder of the small house.   While conducting the sweep Deputy U.S. Marshal Josh Moff found two long guns, a 12 gauge shotgun and a .22 long rifle, in an empty bedroom closet.  The defendant was allowed to put on clothes and was then taken to the Sedgwick County Detention Center.  While at his residence officers did not ask the defendant any questions.

Special Agent (SA) Neal Tierney of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was then called by the parole officers because the defendant was found with the two firearms.  SA Tierney went down to the Sedgwick County Detention Center to interview the defendant.  SA Tierney advised the defendant of his rights per Miranda.  The defendant

---

[1] About the same time the officers knocked on the door they employed a device that used doppler radar to determine if anyone was inside the residence.  The device indicated that a person was inside the residence.  The government is not using this information to form the requisite reasonable belief that the defendant or any other person was inside the house at the time the officers entered the residence.  *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038 (2001).

waived his rights and agreed to speak to SA Tierney.  During the conversation the defendant told SA Tierney that the firearms belonged to his cousin.  The defendant explained that he had been holding the firearms since the second week of January 2013.  The defendant said he put the firearms in the bedroom closet when he received them from his cousin.  The defendant went on to say that he knew he was a felon and that he was planning on turning himself into the authorities after his girlfriend had delivered the baby she was presently carrying.

## LEGAL ARGUMENTS

The defendant states that the evidence collected in this case should be suppressed.  First, the defendant states the officers did not have the authority to enter the defendant's residence.  Second, he states that the warrant signed by the Secretary of Corrections was not constitutionally valid, and third, he states that the officers' sweep of the residence was improper.  Lastly, he states that the subsequent interview of the defendant was product of the illegal search and should also be suppressed.

1.    Entry into the Defendant's Residence

The entry into the Hillside residence was proper because the officers had a reasonable belief that the defendant lived at the address, and that he was inside the residence at the time they entered.  The Tenth Circuit has adopted a two-prong test to determine if an individual may be arrested out of a residence based on an arrest warrant.  "Officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001) *citing Valdez v. McPheters*, 172 F.3d 1220, 1224-25 (10th Cir. 1999).  A "reasonable belief" is something less than "reasonable suspicion".  *See Gay*, 240 F.3d at 1227 ("These are two different legal standards.").  Therefore with an adequate reasonable belief of the defendant's ownership and occupancy of the residence

it was proper for the law enforcement officers to enter the Hillside address to arrest the defendant.

The officers had a reasonable belief that the Hillside address was the defendant's residence.  State Parole Officer Bansemer had learned that the defendant's name was on the utilities at the 1645 N. Hillside residence.  The other person who was listed on the utilities was the defendant's girlfriend, a person the defendant was likely to live with.  Based on this the officers had a reasonable belief that the location was the residence of the defendant.

The officers had a reasonable belief that the defendant was at the residence at the time they entered the residence.  In order to determine if the officers had the requisite reasonable belief the court is to "be sensitive to common sense factors indicating a resident's presence." *Valdez*, 172 F.3d at 1226.  It is not necessary that the officers actually see the arrestee on the property in order to arrest him inside the residence.  *Id*.  There are a number of common sense factors that indicate the defendant was at the residence at the time the officers found him there.  First, the officers had an indication that that someone had recently entered the residence, which was likely the defendant, when they saw fresh footprints in the snow leading up to the back door.  Second, the officers observed an electrical meter that was moving quickly to indicate that electrical equipment was in operation inside the residence.  *Id.*   ("observing the operation of lights or other electrical devices").  Third, the defendant had no known employment and would likely be at home at 8:30 a.m.  *Id*.  ("reasonable to believe suspect would be 'at his place of abode, especially at 8:30 in the morning for a man not known to be working'").  Fourth, both the defendant and his girlfriend had outstanding warrants for their arrest.  The defendant, who was on parole for a previous aggravated robbery conviction, had absconded from his supervision nearly four months previously.  His active warrant was for the failure to report as required.  The

girlfriend had an active warrant for a probation violation on a prior fleeing and eluding conviction.  The officers did knock at the front door and announce their presence, but no one came to the door.  Therefore, it was logical for law enforcement to believe that both the defendant and his girlfriend may be attempting to conceal their whereabouts inside the residence. *Id.* ("Officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts.").  Further, until officers connected the defendant to the Hillside residence through the utilities check, there had been no other location connected to the defendant since he had absconded.  ("Officers may consider an absence of evidence the suspect is elsewhere.") *Id.*  Therefore, based on these factors the officers had a reasonable belief that the defendant was inside the residence at the time they entered.

2.  <u>Arrest of the Defendant</u>

The arrest of the defendant was made under the authority of a Kansas Department of Corrections (KDOC) warrant.  The defendant complains that the arrest warrant was invalid because it was "not subject to a judicial determination of probable cause required by the Fourth Amendment, but simply issued by the Kansas Secretary of Corrections or his designee, an officer under the state's executive branch."  (Doc. 13 at 6).  The defendant supports his argument with a line of cases dealing with warrantless searches, but those cases do not deal with a warrant approved by someone in a position such as the Kansas Secretary of Corrections.

This same argument was recently raised and answered in *United States v. Eden*, Case No. 12-CR-10221-EFM, (Doc. 43) July 11, 2013.  In *Eden*, Judge Melgren stated that the arrest warrant for a parolee issued by the Kansas Secretary of Corrections was valid.

> Eden further argues that the KDOC warrant itself was invalid – and, by extension, that Kan. Stat. Ann. § 75-5217(a) is unconstitutional – because the warrant was not signed by a neutral and detached magistrate as required under the Fourth Amendment.  A "magistrate," for purposes of the warrant requirement, does not

necessarily refer to a member of the judicial branch.[2]  As interpreted by the
Supreme Court, the Fourth Amendment requires that the individual issuing a
warrant is both (1) neutral and detached from activities of law enforcement, and
(2) capable of determining whether probable cause exists for the requested arrest
or search.[3]  The Court has held that neither the President nor a state attorney
general meet this standard.[4]  Municipal court clerks, on the other hand, are
sufficiently detached to qualify as magistrates for purposes of issuing warrants.[5]

*Id.* at 8-9.

The court in *Eden* went on to state that although the Kansas Secretary of Corrections is a

member of the executive branch, he did not have authority over law enforcement investigations

or prosecutions.  *Id*.  The purpose of parole officers is to assist the courts to monitor parolees,

and it is the parole officers that are in the best possible position to determine if there is probable

cause that they have violated the terms of their parole.  *Id*.  The *Eden* Court found Kan. Stat.

Ann. § 75-5217(a) constitutional, and that the arrest warrant signed by the Kansas Secretary of

Corrections to be valid.  *Id*.  This Court should find the present KDOC warrant valid for the same

reasons.

While typically, the remedy for a Fourth Amendment violation is the exclusion of

evidence obtained from an unlawful search, *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160,

94 L.Ed.2d 364 (1987), the exclusionary rule does not apply where officers act in reasonable

reliance upon a statute, because justice is not served by punishing officers for the mistakes of the

legislature.  *Id*. at 349, 107 S.Ct. 1160; *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405,

82 L.Ed.2d 677 (1984).  Accordingly, in reviewing a motion to suppress, a court may consider

whether the good-faith exception applies to a search without passing on the constitutionality of

---

[2] *See Shadwick v. City of Tampa*, 407 U.S. 345, 352 (1972) (rejecting "any per se invalidation of a state or local
warrant system on the ground that the issuing magistrate is not a lawyer or a judge.").
[3] *Id*. at 350.
[4] *United States v. U.S. Dist. Court for the E. Dist. of Mich.*, 407 U.S. 297 (1972); *Coolidge v. New Hampshire*, 403
U.S. 443 (1971).
[5] *Shadwick*, 407 U.S. at 350-51.

the authorizing statute. *See United States v. Cardenas–Alatorre*, 485 F.3d 1111, 1115 (10th Cir.2007) (assuming, without deciding, unconstitutionality of New Mexico statute).

The conduct of the officers in this case conformed with Kansas law and practice, and they clearly acted with a good faith belief in the legality of his actions. The KDOC warrant was facially valid.  For the officers to have determined that the warrant did not pass Constitutional standards, they would have had to do legal research and come to a conclusion that no court has reached.  No such obligation exits.  The Supreme Court, in *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct.2627, 61 L.Ed.2d 343 (1979), said just that in applying the good faith exception to a challenge to a Michigan statute holding that:

> [p]olice are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Id*. at 38, 99 S.Ct. 2627.

Reasonable officers enforce the legislative enactments they are given and do not arrogate to themselves the right to second guess the people's representatives, except in the most extreme of cases. *See United States v. Cardenas–Alatorre*, 485 F.3d 1111, 1115 (10th Cir.2007).  The defendant has not shown the statute in question to be "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id. quoting  Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct.2627, 61 L.Ed.2d 343 (1979); *see also United States v. Vanness*, 342 F.3d 1093, 1098 (10th Cir.2003) (to same effect); Wayne R. LaFave, Search and Seizure § 1.3(h), at 96–97 (3d ed.1996) (describing *DeFillippo* as reaching "an eminently sound result").

7

Under the circumstances of this case, it certainly was not unreasonable for law enforcement to rely on the facially valid state warrant. Each of the officers was authorized by law to make arrests, and they were simply carrying out their duty to arrest a fugitive from justice for whom an arrest warrant had been issued.  *See United States v. Gobey*, 12 F.3d 964, 968 (10th Cir. 1993) (suppression unavailable where federal agent and state officers arrested defendant based on an active state warrant for failure to appear on a summons, even though the warrant was defective; detective was not required to "investigate and retrace the steps by which the warrant was issued").

3.   Discovery of the Firearms

Two long guns were discovered in the defendant's residence when the officers conducted a protective sweep of an adjoining room of where the defendant was found.  A protective sweep may be conducted by law enforcement officers when they execute an arrest warrant inside a residence if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093 (1990).  Although reasonable suspicion requires "something more than an inchoate and unparticularized suspicion or hunch," *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989), it requires "considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673 (2000).

At the time the defendant was arrested the officers had reasonable suspicion that someone else could be inside the defendant's residence, and that individual could pose a danger to the officers.  The "totality of the circumstances" present in this case established a reasonable basis for the officers to conduct the protective sweep.  First, the officers had a warrant for the

8

defendant's arrest for violating his parole on an aggravated robbery conviction.  Second, the defendant was a known gang member and therefore one of his associates could also be inside the house.  Further, gang members often carry firearms or other weapons creating a greater danger for the officers.  Third, the officers knew that the defendant's girlfriend, who was also connected to the residence, had an outstanding arrest warrant for a probation violation and might be hiding.  Fourth, when the officers knocked on the door, no one answered the door, increasing the possibility that the girlfriend or someone else may have taken the opportunity to hide.  Fifth, there were recent footprints of an unknown individual coming from the front of the house to enter the house in the back.  It would be unusual for someone, such as the defendant, to enter the house around 8:30 a.m. and immediately go to bed where the defendant was found.  When these facts are then taken as whole they "created a reasonable suspicion that a dangerous third party was inside [the defendant's] house at the time of the arrest."  *United States v. Hauk*, 412 F.3d 1179, 1193 (10th Cir. 2005).

The protective sweep was done contemporaneous with the arrest of the defendant and limited to those spaces where a person could be found.   The protective sweep may last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335-36, 110 S.Ct. 1093.  The defendant was found in his bedroom and brought into the living room where he was handcuffed.  The officers patted him down and sat him on a nearby couch.  Some clothes were gathered for the defendant and he was allowed to get dressed in the living room.  As this was being done with the defendant, the nearby room was searched for anyone that might be hiding.  The room was empty but when officers opened a closet door they found the two firearms standing up inside. *United States v. Flores*, 149 F.3d 1272, 1278 (10th Cir. 1998) (A protective

sweep may include those places where a person may be found.)  There was nothing else in the closet.  This search took place in matter of seconds.  Therefore, the protective sweep was done quickly and in less time than it took the officers to arrest the defendant and allow him to get dressed.

The firearms were seized in plain view.  "If police officers conducting a proper protective sweep of a dwelling come across evidence of criminal activity in plain view they may seize it, so long as that evidence is such that a reasonable police officer would conclude, based on experience and circumstances, that the item is probably incriminating."  *Id. citing United States v. Tisdale*, 921 F.2d 1095, 1097 (10th Cir. 1990).  Here the officers were conducting a proper protective sweep.  They entered an adjoining bedroom and then opened the closet door of the bedroom.  When they opened the closet door, the only items inside were two long guns.  The officers knew the defendant was a convicted felon and could not have firearms.  Therefore, the incriminating nature of the firearms was readily apparent and it was proper for them to be seized.

4.    Interview of the Defendant

The United States has the burden of proving by a preponderance of the evidence that the defendant was advised of his rights and voluntarily and knowingly waived them. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The inquiry into the waiver's validity has two dimensions: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have

been waived.  *United States v. Smith*, 606 F.3d 1270, 2010 WL 2197524 at *3 (10th Cir. June 3, 2010) (*quoting Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

The interview of the defendant was done after the defendant was advised of his rights and he agreed to waive those rights.  Following the arrest of the defendant he was taken to the Sedgwick County Detention Center.  By that time ATF Special Agent Neal Tierney had been called and informed of the firearms that were found.  SA Tierney first went to the defendant's residence to look at the firearms, and then went to the Detention Center to interview the defendant.  Before SA Tierney started the interview he identified himself and showed the defendant his ATF credentials.  He then read the defendant his rights per *Miranda* by way of ATF Form 3200.4.  The defendant waived his rights, signed the form, and agreed to speak with SA Tierney.  During the interview the defendant admitted that he knew he could not possess firearms.  He stated that the two firearms belonged to his cousin whose wife was in the military and overseas.  The cousin had asked the defendant to hold the firearms for him while he was gone.

Viewing the totality of the circumstances, the United States asserts that the defendant validly waived his Fifth Amendment right to remain silent.  The defendant was informed of his rights orally and in writing by SA Tierney.  The defendant communicated sufficiently with SA Tierney so as to fully understand the nature of the rights being abandoned and the consequences of that decision.  Accordingly, the defendant's waiver was knowingly, intelligent, and voluntary. Here, no coercion has been shown or alleged.  Therefore, the interview was properly conducted and should not be suppressed.

11

**CONCLUSION**

The entry into the defendant's residence at 1645 N. Hillside was proper.  The officers had a reasonable belief that the defendant lived at that address and that he was inside the residence at the time they entered.  The arrest of the defendant on the warrant signed by the Kansas Secretary of Corrections was valid.  The arrest was allowed under Kansas statutory law and that statute is constitutionally sound.  The plain view seizure of the firearms was allowed when the officers conducted the protective sweep of the residence.  Lastly, the interview of the defendant by SA Tierney was made following the defendant's waiver of his rights per *Miranda*.

WHEREFORE, the government prays that this Court deny the defendant's motion to suppress.

Respectfully submitted,

BARRY R. GRISSOM
United States Attorney

s/ Matt Treaster
MATT TREASTER
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
316-269-6481
Fax: 316-269-6484
Email: matt.treaster@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Timothy J. Henry, attorney for the defendant.

<u>s/ Matt Treaster      </u>
MATT TREASTER
Assistant United States Attorney